42627.   PETERS v. THE STATE.

ARGUED MARCH 7, 1967—DECIDED MAY 19, 1967.

*A. L. Haden, Jr.,* for appellant.

*W. B. Skipworth, Jr., Solicitor General, Frank K. Martin,* for appellee.

BELL, Presiding Judge.   ■   The appellant contends that his arrest without a warrant was illegal and therefore evidence obtained from his person without a search warrant during the illegal arrest was inadmissible at the trial.   "Evidence of guilt which the defendant, either directly or indirectly, is compelled to disclose by an unlawful search and seizure of his person under illegal arrest, is not admissible in a criminal prosecution of the person thus illegally arrested."   *Scott v. State,* 14 Ga. App. 806 (4)   (82 SE 376).   See Mapp v. Ohio, 367 U. S. 643 (81 SC 1648, 6 LE2d 1081).

In a previous appeal of this case, the appellant secured a new trial because the State failed in its burden of showing the legality of the warrantless arrest, the court predicating its reversal on its finding that the State did not present with sufficient speci-

ficity that the arrest was made by the officers on probable cause, i.e., "whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the defendant had committed . . . an offense." *Peters v. State,* 114 Ga. App. 595 (152 SE2d 647). (See the cited case for a good analysis of the law and discussion of the problems involved in this area). The question here is whether the State carried this burden on the re-trial.

The defendant-appellant was indicted, tried and convicted for a burglary occurring on the premises of H. Rothschild, Inc., where a locked safe had been forcibly opened and certain of its contents taken. The burglary was discovered by law enforcement officers on March 6, 1966. Detective Baker, who was shown to have been in New York during the first trial, testified that he had come into the case on March 7, 1966. At about noon on that day he had been in contact with an informer with whom he had discussed the burglary. He had known the informer for "ten or twelve years." He had received information from this informer on previous cases for a period of about two or three years which had proved to be reliable. On cross-examination the detective testified that he had received information from the informer on two other cases "like this one . . . that I was able to take the information that I got from him and go on and complete the cases," that the informer had never given him any information that proved unreliable or that he was not able to verify, and that the informer had told him that Peters was definitely the man. On direct examination the detective testified that during their first conversation the informer told the detective "I am sure I know who did that job . . . I will be in touch with you later." Later, between 4:30 and 5 o'clock, the detective had another conversation with the informer who said that it was Peters [defendant] "who hit that job . . . when you find Peters you are going to find that he was injured because the safe door fell on him . . . he has got a skinned place over one of his eyes, one of his shoulders and arm and side is bruised up . . . he is around town right now but he is fixing to leave town." The detective testi-

fied that the informer also told him that a few days before the burglary the informer had attempted to get Peters to repay him a loan but that Peters said he had no money and to give him a few days. Since then, the informer told the detective, Peters had paid him over a hundred dollars, had paid his room rent and had paid someone else over a hundred dollars, and now had a roll as big as your fist. The detective then discussed this information with his superior and it was decided to get a warrant for Peters' arrest. He "got connected with Mr. Aldridge's office but he was out and I didn't get anyone there that could sign a warrant. . . Judge Bagley was not in. I called the sheriff's office and someone in the sheriff's office checked and no other judge" of the city court or of the superior court was present. He was unable to secure a warrant at that time because of the non-availability of a judge to issue one. He called "Mr. Aldridge's house between 5 p.m. and 5:30 p.m. but learning that Aldridge was not in, the detective left word for Aldridge to call. Around seven o'clock the detective received another telephone call from the informant who told the detective that Peters was "in the Broadway Pool Room at this time and there is a car in the streets to pick him up and they are going to leave town." Detective Baker and detective Jones then went to the Broadway Pool Room and saw Peters sitting on a stool facing the street and watching TV. The detective saw a skinned place over one of Peters' eyes. Peters was then arrested. On cross examination it was brought out that the detective knew of two magistrates other than those he had attempted to contact in order to secure the warrant but he had made no effort to contact those two. He had made no further effort to locate a magistrate after he left word at Mr. Aldridge's house for Aldridge to call. Questioned by the court, the detective testified that he had made every effort to locate a magistrate that he knew how to make, that the Broadway Pool Room was located about two blocks from the State line, and that he felt it imperative to place Peters under arrest immediately to preclude escape.

As we view the above testimony, the standards enunciated by the *Peters* case, 114 Ga. App. 595, supra, which were based

primarily on criteria established by decisions of the Supreme Court of the United States, were fulfilled by the State. The arrest of the defendant-appellant was therefore a legal arrest and the trial court did not err in admitting evidence obtained from his person without a search warrant during the arrest. There is no merit in the enumerations of error numbered 7, 8, 10 and 11 or in enumerations 4, 5, 6 and 9.

■ There is no merit in the contention also raised by the defendant-appellant in his enumeration 7 that his arrest, if originally legal, was rendered void ab initio by Ga. L. 1956, pp. 796, 797 (*Code Ann.* § 27-212) because he was detained for some 36 hours before being taken before a magistrate for a committal hearing when he could have been accorded the hearing before the same tribunal a whole day earlier. The contention, of course, relates directly to the admissibility of the evidence discussed in Division 1 above.

The provision of the statute that a person arrested without a warrant and not conveyed before an officer authorized to issue a warrant within 48 hours "shall be released" means only that the person shall be released from imprisonment or custody until a warrant is obtained—it does not mean that an arrest legally made is rendered void ab initio. See *Blake v. State,* 109 Ga. App. 636 (2, 3) (137 SE2d 49), cert. denied, 109 Ga. App. 884, cert. denied, 379 U. S. 924.

■ Enumeration 12 objecting to the court's recharge of the jury, at the jury's request, on the law pertaining to recent possession of stolen goods, is without merit. The instruction given was a correct pronouncement of the law and did not contain, as contended, any intimation by the court that the items found on defendant at the time of his arrest were a part of the fruits of the burglary.

The evidence having authorized the verdict and no error appearing, the judgment is

*Affirmed. Jordan and Pannell, JJ., concur.*