384 So.2d 442 (1980)
STATE of Louisiana
v.
Willie James CHANEY, Jr.
STATE of Louisiana
v.
Chad WATSON.
No. 66796.
Supreme Court of Louisiana.
May 19, 1980.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Duncan S. Kemp, III, Dist. Atty., Abbott J. Reeves, Asst. Dist. Atty., for plaintiff-respondent.
William L. Brooks, Amite, for defendants-relators.
DIXON, Chief Justice.[*]
Willie James Chaney, Jr. and Chad Watson were arrested and incarcerated on December 17, 1979. On January 10, 1980 more than three weeks laterthey appeared before a judge for the first time, and then for the purpose of a hearing on their applications for writs of habeas corpus. In their applications the prisoners alleged that they were unlawfully confined and they prayed for their release. The basis for their applications was C.Cr.P. 230. 1, which provides:
"A. The sheriff having custody of an arrested person shall bring him promptly, and in any case within seventy-two hours from the time of the arrest, before a judge for the purpose of appointment of counsel. Saturdays, Sundays, and legal holidays shall be excluded in computing the seventy-two hour period referred to herein.

*443 B. At this appearance, if a defendant has the right to have the court appoint counsel to defend him, the court shall assign counsel to the defendant. The court may also, in its discretion, determine or review a prior determination of the amount of bail.
C. If the arrested person is not brought before a judge in accordance with the provisions of Paragraph A of this Article, he shall be released forthwith.
D. The failure of the sheriff to comply with the requirements herein shall have no effect whatsoever upon the validity of the proceedings thereafter against the defendant."
The trial court denied their applications and this court granted writs to review that ruling.
There is no question that the letter of article 230.1 was violated. Chaney and Watson were not brought before a judge for the purpose of appointment of counsel within seventy-two hours from the time of their arrests. At the hearing on their habeas corpus applications it was shown, however, that within this period both prisoners were interviewed by an investigator who is also an attorney, employed by the Public Defenders' Office of the Twenty-first Judicial District. The investigator testified that it is his policy to interview all arrested persons within ninety-six hours of their incarceration, unless they are released on bond. The interview is designed to elicit information about the circumstances of the arrest (that is, whether the prisoner was advised of his rights, made any confessions or inculpatory statements, whether some type of search was involved, whether there were co-defendants or witnesses) and about the prisoner's prior record and current needs. At the interview the investigator also informs the prisoner of the amount of bond that has been set and determines whether he can meet the bond or whether a bond reduction hearing will be necessary. After the information obtained by the interview is conveyed to the Public Defenders' Office in Amite, attorneys in that office may file for a hearing to set or reduce bond before they are officially appointed to represent an indigent defendant. On the basis of this testimony, the trial judge concluded that "the spirit of Article 230.1 has been more than fulfilled," and he denied the writs of habeas corpus.
The trial judge was certainly correct in commending the Twenty-first Judicial District Public Defenders' Office for its efficiency and proficiency. We cannot agree, however, that mere fulfillment of the "spirit" of a statutory provision constitutes adequate compliance with the statute. In State v. Murray, 222 La. 950, 953, 64 So.2d 230, 231 (1953), we stated that where the "language used in the applicable provision... is express and unequivocal .. (it) is to be given effect as written."[1] The language of C.Cr.P. 230.1 is express and unequivocal: it commands the sheriff to bring an arrested person before a judge within seventy-two hours for the purpose of appointment of counsel, and it orders that the prisoner be released forthwith if this procedure is not observed.[2] These mandates must be given effect as written.
We also cannot agree that the spirit of this provision was fulfilled when Chaney and Watson were interviewed, in jail, by an investigator-attorney. C.Cr.P. 230.1, Acts 1972 No. 700, was presented in 1972 as Senate Bill # 342, a bill for early appointment of counsel after arrest.[3] Comments *444 prepared in support of the bill referred to a study of the Louisiana court system, made in 1971-1972 by the Institute of Judicial Administration. The study showed that the average lapse of time between arrest and arraignment, the proceeding at which the court was required to appoint counsel by C.Cr.P. 512, was eighty days; in ten per cent of the cases the time lapse was between one hundred forty-five and three hundred thirty-four days. Statistical Appendix to A Study of the Louisiana Court System at 57 (1972). The study recommended that all cases be brought under early court control by means of a first judicial hearing, to be held within a maximum of seventy-two hours after arrest. Among the functions to be performed by this mandatory hearing were the appearance of the arrested person before a judicial officer, the appointment of counsel and the setting of bail. A Study of the Louisiana Court System at 111 (1972). The Comments also indicated that prompt appointment of counsel was required by the due process right to adequate trial preparation and by the need to protect the other constitutional rights of an accused. While the interviews conducted by the Public Defenders' Office were a first step in this direction, it cannot be said that an accused's rights are adequately protected, or that preparation of his case is actually begun, until an individual attorney is appointed to assume full responsibility for his representation.
It should also be noted that article 230.1 requires not only that counsel be appointed within seventy-two hours, but also that an arrested person be brought before a judge at this time. This mandatory "first appearance" before a member of the judiciary itself serves a highly significant function, forming a dividing line between an initial period during which an accused is detained by and under the sole control of the law enforcement branch of the criminal justice system, and the time when responsibility for his custody is assumed by the judicial branch. Even when police officers are scrupulous in observing an arrested person's rights, an accused's prompt appearance before a judge enhances the protection afforded to him. This appearance must also be of significance to an accused, as symbolic of the involvement of a neutral official. In McNabb v. United States, 318 U.S. 332, 342-344, 63 S.Ct. 608, 614-615, 87 L.Ed. 819, 825-826 (1943), the United States Supreme Court addressed the necessity for a prompt first appearance before a judge in the following terms:
"... Similar legislation, requiring that arrested persons be promptly taken before a committing authority, appears on the statute books of nearly all the states.
The purpose of this impressively pervasive requirement of criminal procedure is plain. A democratic society, in which respect for the dignity of all men is central, naturally guards against the misuse of the law enforcement process. Zeal in tracking down crime is not in itself an assurance of soberness of judgment. Disinterestedness in law enforcement does not alone prevent disregard of cherished liberties. Experience has therefore counseled that safeguards must be provided against the dangers of the overzealous as well as the despotic. The lawful instruments of the criminal law cannot be entrusted *445 to a single functionary. The complicated process of criminal justice is therefore divided into different parts, responsibility for which is separately vested in the various participants upon whom the criminal law relies for its vindication. Legislation such as this, requiring that the police must with reasonable promptness show legal cause for detaining arrested persons, constitutes an important safeguardnot only in assuring protection for the innocent but also in securing conviction of the guilty by methods that commend themselves to a progressive and self-confident society. For this procedural requirement checks resort to those reprehensible practices known as the `third degree' which, though universally rejected as indefensible, still find their way into use. It aims to avoid all the evil implications of secret interrogation of persons accused of crime. It reflects not a sentimental but a sturdy view of law enforcement. It outlaws easy but selfdefeating ways in which brutality is substituted for brains as an instrument of crime detection. A statute carrying such purposes is expressive of a general legislative policy to which courts should not be heedless when appropriate situations call for its application."
In its compendium of state statutes providing for a prompt first appearance, the McNabb court included articles 79 and 80 of the 1932 Louisiana Code of Criminal Procedure. Those articles provided that any person arrested, whether with a warrant or without a warrant, should be brought before a judge "without unnecessary delay." Article 82 further provided that the judge should remand the prisoner for trial or for preliminary examination if the accused was entitled to such an examination,[4] should set bail and should sign a commitment specifying the offense charged, if bail was unavailable or could not be met.
The same provisions appeared in the Revised Statutes of 1950 as 15:79-82, but they were omitted from the 1966 Code of Criminal Procedure, apparently because the first appearance procedure had fallen into disuse. Note, 36 La.L.Rev. 1050 (1976). Instead, in article 228 the new code retained an earlier provision, formerly R.S. 15:77, which required that an arrested person be booked promptly; article 229 added the requirement that the booking officer inform him of certain rights. These booking procedures at least assured that a particular jail or police station would promptly become responsible for the custody of an accused, that his identity and the nature of the charge against him would be recorded, and that he would be notified of his rights. They were deficient, however, in that they failed to provide for his prompt appearance before a neutral member of the judicial branch. With the enactment of C.Cr.P. 230.1 six years later, this deficiency was corrected: an arrested person must now appear before a judge within seventy-two hours of his arrest. In the cases before us, Chaney and Watson were deprived of their right to a first appearance, and we cannot find that their interview with an investigator, conducted in jail, constituted compliance with the spirit of 230.1, much less with the statute's express language.
Article 230.1 also states, in express and unequivocal language, that an arrested person "shall be released forthwith" if the state fails to comply with its provisions. Because prior cases involving violations of this article's provisions have reached this court on appeals from convictions, and § D of 230.1 provides that failure to comply with its requirements has no effect on subsequent proceedings, we have not yet had an opportunity to address the interpretation of the sanction for non-compliance.[5] However, *446 in one of those cases, State v. Durio, 371 So.2d 1158, 1163 (La.1979), we made the following observation:
"... While the trial court's denial of the motion to have defendant released may have been error, and may have prompted this Court to order him released had he sought supervisory writs to review the ruling at the time, we review this ruling after defendant has been convicted and sentenced. The issue at this point in the proceeding is now certainly moot."
In interpreting the language of article 230.1, we also note that in State v. Johnson, 249 La. 950, 972, 192 So.2d 135, 144 (1966), this court had occasion to interpret articles 80 and 81 of the 1928 Code of Criminal Procedure, which provided that if an affidavit setting forth the charge against a prisoner was not made upon his prompt appearance before a judge, the judge should "order him forthwith to be discharged from custody." The court found that upon failure to comply with these provisions, "the arrested [person] is entitled to be released." Although article 230. 1's sanction is phrased in terms of "release" rather than "discharge from custody," this difference is without significance; the Code of Criminal Procedure uses these terms interchangeably. See C.Cr.P. habeas corpus articles 361, 362 ("discharge from custody") and 365, 369, 370 ("release").
The state argues that even if we should find that the release sanction of the statute is applicable here, and that it means exactly what it says, this issue is moot as to these defendants because they have already been "released" on bail.[6] In Gerstein v. Pugh, 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54, 65 (1975), the United States Supreme Court found that a prompt neutral determination of probable cause is required whenever restraint of an accused's liberty is threatened, and it noted that "[e]ven pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty," citing a federal statute which includes pretrial bail as an example of such burdensome conditions. Similarly, the Preliminary Statement to Title VIII, Bail, of the Code of Criminal Procedure acknowledges the fact that release on bail is a "conditional release." We also note that in the study of Louisiana courts prepared by the Institute of Judicial Administration, that body recommended, with regard to the mandatory first appearance, that "[i]f charges have not been filed within the designated time, the defendant should be released from custody if he is detained or, if he has already been released, he should be relieved of his obligation on his bond if he so requests." A Study of the Louisiana Court System at 110 (1972). There is no reason to believe that the redactors of article 230.1 meant to pull the teeth of the sanction provided for non-compliance by conditioning mandatory release on the ability to give bail. It is also impossible to believe that an accused who is unable to give bail should be granted a complete release, while an accused with greater resources is only entitled to a conditional release. *447 That the sanction of release, when imposed by the Code of Criminal Procedure, is intended to be unconditional also appears clearly from C.Cr.P. 296, which provides that upon a finding of no probable cause at a preliminary examination, the court shall order the defendant's release "from custody or bail." This more specific language is not required by the situation generally contemplated by article 230.1, one in which there has not yet been an opportunity to set bail, but there is no doubt that the release required by that article is also an unconditional release, without bail.
For the reasons assigned, the judgment of the trial court denying petitioners' applications for writs of habeas corpus is reversed. Petitioners are ordered discharged from custody and from bail forthwith.
MARCUS, J., concurs and assigns reasons.
WATSON, J., dissents.
MARCUS, Justice (concurring).
I agree with the majority that, because the language used in La.Code Crim.P. art. 230.1 is express and unequivocal and must therefore be given effect as written, petitioners must be "released forthwith." However, it should be noted that section (D) of art. 230.1 provides that "[t]he failure of the sheriff to comply with the requirements herein shall have no effect whatsoever upon the validity of the proceedings thereafter against the defendant." This language must also be given effect as written. Therefore, as soon as petitioners are released, they may be arrested again without a warrant if the arresting officer has probable cause to believe that petitioners have committed an offense. La.Code Crim.P. art. 213. I recognize this result is unsatisfactory; nevertheless, any change in the statute addresses itself to the legislature. Accordingly, I respectfully concur.
NOTES
[*] Chief Judge FREDERICK STEPHEN ELLIS, Louisiana Court of Appeal, First Circuit, participated in this decision as an Associate Justice Ad Hoc.
[1] See also C.C. 13, which provides: "When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit."
[2] As originally enacted in 1972, the statute established a period of six days and permitted its extension for an additional six days by written order of a judge "upon a showing of good cause." It also provided for release upon noncompliance, "unless good cause is shown."

The 1977 amendment not only shortened the period to three days but also deleted the provision for an extension and the "good cause" exception to mandatory release. See note 3, infra.
[3] In its original form, article 230.1 provided:

"A. The sheriff having custody of an arrested person shall bring him promptly, and in any case within one hundred forty-four hours from the time of the arrest, before a judge for the purpose of appointment of counsel. Saturdays, Sundays, and legal holidays shall be excluded in computing the one hundred forty-four hour period referred to herein. The time limit prescribed herein may be extended by written order of a judge for an additional maximum period of one hundred and forty-four hours upon a showing of good cause. The order shall state the reason for the extension and shall be communicated to the arrested person.
B. At this appearance, if a defendant has the right to have the court appoint counsel to defend him, the court shall assign counsel to the defendant. The court may also, in its discretion, determine or review a prior determination of the amount of bail.
C. If the arrested person is not brought before a judge in accordance with the provisions of Subsection A of this article, he shall be released forthwith, unless good cause is shown.
D. The failure of the sheriff to comply with the requirements herein shall have no effect whatsoever upon the validity of the proceedings thereafter against the defendant."
[4] It should be noted that this mandatory appearance before a judge did not function to determine probable cause. This fact highlights the significance of the appearance before a member of the judiciary, in and of itself.
[5] For cases finding this issue moot because it was raised in the context of subsequent proceedings, see State v. Guzman, 362 So.2d 744 (La.1978); State v. Gibson, 357 So.2d 1092 (La. 1978); State v. Calloway, 324 So.2d 801 (La. 1976); State v. Brown, 322 So.2d 211 (La. 1975); State v. Epperson, 289 So.2d 495 (La. 1974). State v. Daigle, 353 So.2d 287 (La. 1977), concerned a writ application complaining that the statutory period had elapsed without an appearance for appointment of counsel. However, counsel had been appointed at the time the writ application was filed. The application was denied by a majority of the court but three justices would have granted it. They were of the opinion that article 230.1's unequivocal language required the defendant's immediate release, despite the fact that an attorney had finally been appointed.

In a supplemental brief on the issue of the sanction for non-compliance, the state cites statutes and cases from several other jurisdictions, but these are without relevance because the statutes do not provide specific sanctions for failure to comply, as the Louisiana statute does. Among the jurisdictions to which the state's brief refers us, only Georgia provides that a person who is arrested without a warrant "shall be released" if he is not brought before an officer authorized to issue warrants within forty-eight hours; and the Georgia courts have interpreted this provision to mean release "from imprisonment or custody" until a warrant is obtained. Ga.Code Ann. § 27-212; Peters v. State, 115 Ga.App. 743, 156 S.E.2d 195, 197 (1967); Blake v. State, 109 Ga.App. 636, 137 S.E.2d 49 at 53 (1964).
[6] At oral argument it was stated that both defendants had been released on bail.