Leon **BRENT**, Appellant,

v.

Wingate **WHITE**, Warden, Louisiana State Penitentiary, Appellee.

No. 25496.

United States Court of Appeals
Fifth Circuit.

July 18, 1968.

Anthony G. Amsterdam, Philadelphia, Pa., for appellant.

Ralph L. Roy, Asst. Dist. Atty., 19th Judicial Dist., Walter R. Krousel, Jr., Sargent Pitcher, Jr., Dist. Atty., 19th Judicial Dist., Jack P. F. Gremillion, Atty. Gen., State of La., Baton Rouge, La., for appellee.

Before THORNBERRY, AINSWORTH and DYER, Circuit Judges.

DYER, Circuit Judge:

Brent was convicted in February 1964 of aggravated rape and sentenced to death. His conviction was affirmed on direct appeal, and state post conviction, remedies were denied. We stayed his execution pending this appeal from the dismissal, after a hearing of his petition for a writ of habeas corpus and the denial of his motion to amend his habeas petition in order to attack his sentence.

Appellant first urges that the District Court erred in rejecting his claim that his confession, received in evidence at trial, was involuntarily made and that its introduction thus violated his Fourteenth Amendment rights. In support of this contention he argues that his request for counsel during interrogation was denied. On the basis of directly conflicting testimony between appellant and police [1] the District Court found that appellant had not requested counsel. This finding is not clearly erroneous. McCoy v. Wainwright, 5 Cir. 1968, 396 F.2d 818 [June 17, 1968]. The evidence showing the circumstances surrounding the confession reveals that it was made freely and voluntarily, without threat or coercion.[2] Furthermore, at the state trial court's hearing on the admissibility of the confession, appellant's attorney unequivocally stated no less than three times that he had no doubts that the confession was freely and voluntarily given.

---

1. Cf, Sims v. Georgia, 1967, 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634.

2. The interrogation took place, and the confession was made prior to the decisions in Escobedo v. State of Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Miranda v. State of Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and those decisions are not retroactive. Johnson v. State of New Jersey, 1966, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882. Therefore, the test we must apply in this case is "whether the confession was free and voluntary; that is [it] must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. * * *" Malloy v. Hogan, 1964, 378 U.S. 1, 7, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653.

■■ Appellant also urges as error the admission in evidence of the factual details of a previous conviction for disorderly conduct for insulting a "white girl," and urges that racially directed references to the conviction by the prosecutor denied him a fair trial. The details of his previous conviction probably were admissible under Louisiana law. L.S.A.–R.S. 15:445, 15:446 and 15:495. However, the admissibility *vel non* of the evidence under state law is not determinative of a violation of a federally protected right. Burns v. Beto, 5 Cir. 1967, 371 F.2d 598, 601. The prosecutor's description of the victims as "white girls" revealed nothing that the jury could not itself observe when both testified as witnesses, nor were the prosecutor's comments so inflammatory as to infringe any federally protected rights. Id.

■ Appellant's contention that the use, as evidence, of a blood sample taken to determine his blood type, violated his privilege against self-incrimination is without merit. Schmerber v. State of California, 1966, 384 U.S. 757, 760–765, 86 S.Ct. 1826, 16 L.Ed.2d 908. The sample was taken by a laboratory technician with a master's degree in biochemistry, following appellant's signing of a written waiver which the District Court found to have been signed freely, voluntarily and without threat of coercion, a finding which is not clearly erroneous. Thus it did not constitute an illegal search and seizure. Id. at 766–772, 86 S.Ct. 1826; Landsdown v. United States, 5 Cir. 1965, 348 F.2d 405, 410; United States v. Page, 9 Cir. 1962, 302 F.2d 81, 83. See generally Taylor, "The Supreme Court, The Individual and the Criminal Process," 1 Ga.L.Rev. 386 (1967).

■ Appellant also contends that a penis scraping which revealed menstrual blood of the victim's type violated his Fourth Amendment rights. This, too, is devoid of merit, as the scraping constituted a permissible search of the person incident to a lawful arrest and involved no intrusion of the body surface. Additionally, there was threat of imminent destruction of the evidence of menstrual blood. See Application of Woods, N.D. Cal.1957, 154 F.Supp. 932, cert. denied, Woods v. Heinze, 1958, 356 U.S. 921, 78 S.Ct. 705, 2 L.Ed.2d 716.

Appellant next contends that his petition was denied without an evidentiary hearing on his allegation of systematic racial exclusion of jurors. The history of this allegation reveals that it was ignored, not for lack of an evidentiary hearing, but for lack of evidence at a hearing.

■ Not only were there unsuccessful pretrial discovery attempts to find systematic exclusion, but no motion to quash was ever filed [3] to test this issue. Nevertheless, it was incorporated as a ground for a new trial before the state trial court. It was set for hearing, but no evidence was there adduced to give it substance. The lack of evidence made it impossible for the state supreme court on appeal or the United States Supreme Court on petition for certiorari to consider the allegation.[4] Thus the allegation journeyed back to the state trial court where it appeared in the application for a writ of habeas corpus, was set for evidentiary hearing but again failed for lack of evidentiary foundation. The last gasp of the allegation was in the District Court where it appeared in the petition for habeas corpus but was never mentioned at the hearing. There ends this matter.[5]

3. See L.S.A.–R.S. arts. 15:202, 15:203.

4. See State v. Brent, 1966, 248 La. 1072, 184 So.2d 14, cert. denied, 385 U.S. 992, 87 S.Ct. 605, 17 L.Ed.2d 452.

5. As it was so aptly put in Coffee v. State, Fla.App.1966, 182 So.2d 653, 655:

There inevitably comes a time when even the wheels of the gods must definitely come to a halt, despite the inclination of some of the gods to continue their devinations ad infinitum ad nauseam. Even those who look down from Olympus are circumscribed by the fact that—no fooling!—there is a point in the affairs of state, whether dealing with the legislative, executive or judicial branch, where the beast of

Finally, appellant assigns as error the District Court's refusal to grant him leave to amend his petition "to present five additional substantial challenges to his sentence of death." The challenges thus sought to be raised are identical to those raised in the companion case, today decided, Spencer v. Beto, 5 Cir. 1968, 398 F.2d 500 [No. 25548, July 18, 1968] with an additional argument on racial discrimination.[6] These contentions have not been presented to the state courts of Louisiana. Appellant states that he has no objection to and recognizes "the propriety of presenting all of petitioner's claims to the Louisiana state courts."[7] We agree that the issues are such that the Louisiana courts are best equipped to rule on them. This is especially true of the contention that exclusion of veniremen with conscientious scruples against the death penalty violated appellant's rights under the Due Process and Equal Protection clauses of the Constitution, which is the subject of the recent Supreme Court case of Witherspoon v. State of Illinois, 1968, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (U.S. June 3, 1968). It appears that the only pertinent Louisiana statute provides that "it is good cause for challenge on the part of the prosecution, but none on the part of the defense, * * * that the juror tendered in a capital case has conscientious scruples against the infliction of capital punishment * * *." L.S.A.–R.S. art. 15:352(2).[8] This statute is nearly identical to the Illinois statute involved in *Witherspoon,* and the Texas statute involved in *Spencer*. However, here, unlike *Witherspoon* and *Spencer,* the record before us contains no evidence concerning the number of veniremen, if any, who were excused because they had scruples against the death penalty, or if any were so excused, whether the challenges were based on "general objections to the death penalty or * * * conscientious or religious scruples against its infliction," Witherspoon v. State of Illinois, supra, 88 S.Ct. at 1777, or whether the challenges were

burden, the law-abiding taxpayer, becomes entitled to some respite from the inordinate expense of repeated and unfounded assaults upon the finalized acts' of the society under which we exist. In this process the scales of justice must come to balance between the extremes of "eye for an eye" justice and "turn the other cheek" justice so as to reach "ordinary" justice. Even baseball has a three-strikes-and-out rule.

6. These contentions are as follows:
   1. The absence of controlling standards under which Louisiana juries would decide whether to impose the death penalty violates due process and results in discriminatory imposition of that penalty on negroes convicted of raping white women, in violation of the Equal Protection Clause.
   2. The simultaneous submission to one jury of the issues of guilt and punishment forces a defendant, who desires to present mitigating evidence on punishment, to waive his Fifth Amendment privilege as to the issue of guilt in violation of the Fifth and Fourteenth Amendments.
   3. Exclusion of veniremen from the jury who have scruples against capital punishment violates due process and equal protection.
   4. A sentence of death by electrocution constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.
   5. Due process and equal protection are denied by Louisiana's failure to provide counsel between termination of direct appeal and execution of sentence.

7. Appellant's Brief, p. 47.

8. In its brief the appellee represents that Louisiana also disqualifies "a person who has conscientious scruples against the qualification of a verdict in a capital case * * *" Appellee's Brief, p. 24. However, no authority is cited in support of this statement, and we have found neither statutory nor case law support for it. If the Louisiana state courts determine that state law does exclude persons with scruples either for or against the death penalty, the additional question of whether the *Witherspoon* rationale applies to this case in the first instance would have to be resolved.

based on clearly expressed statements that despite any evidence adduced at trial they would vote against the death penalty or that their view was such as to prevent an impartial decision on appellant's guilt *vel non.* Id. at 1777, n. 21.[9] Therefore, on the record before us, it cannot be determined whether *Witherspoon* invalidates this appellant's death sentence. Principles of comity and federalism, and the importance of the state having the first opportunity to interpret its own law and *Witherspoon's* application to it dictate that these questions be presented to the state courts of Louisiana.[10] Cf. Peters v. Rutledge, 5 Cir. 1968, 397 F.2d 731 [No. 25075, June 6, 1968]; State of Texas v. Payton, 5 Cir. 1968, 390 F.2d 261, 270–271. If the Louisiana courts determine that *Witherspoon* requires reversal of appellant's sentence, the other constitutional contentions which appellant sought to raise before the District Court will become moot. Spencer v. Beto, 5 Cir. 1968, 398 F.2d 500 [No. 25548, July 18, 1968]. On the other hand, if these contentions are presented to the state courts and if the state courts decide that *Witherspoon* does not require that his sentence to death be set aside, these additional issues would remain viable and should be determined at the state level. Of course, if the Louisiana courts do not grant the writ, appellant "can return to the Federal Court for its inescapably independent judgment on federal issues." Peters v. Rutledge, supra. Pending determination by the Louisiana courts of these issues, we will retain jurisdiction in order to continue the stay of execution, "provided appellant immediately files and diligently prosecutes to a prompt conclusion his habeas corpus petition" in the Louisiana state courts. Clarke v. Grimes, 5 Cir. 1967, 374 F.2d 550, 553; Whitney v. Wainwright, 5 Cir. 1964, 339 F.2d 275, 276.

The dismissal of the writ of habeas corpus is

Affirmed.

---

9. In the absence of such evidence, there is no basis for a determination of whether the jury was so prejudiced in favor of capital punishment as to render its verdict on guilt invalid. See Witherspoon v. State of Illinois, supra at 1775. This question should also be considered by the state courts.

10. Louisiana's recently adopted habeas corpus statute, L.S.A.–C.Cr.P. arts. 351–370, provides an adequate procedure for resolution of appellant's contentions.