**Alan LEFKOWITZ,**
**Petitioner, Appellant,**

v.

**Michael FAIR, Commissioner, Department of Corrections, et al.,**
**Respondents, Appellees.**

**Arif HUSSAIN, et al.,**
**Petitioners, Appellees,**

v.

**Michael FAIR, etc., et al.,**
**Respondents, Appellees,**

**Alan Lefkowitz, Petitioner, Appellant.**

Nos. 86–1723, 86–1962.

United States Court of Appeals,
First Circuit.

Argued March 4, 1987.
Decided April 13, 1987.

Gail S. Strassfeld, Boston, Mass., with whom Silverglate, Gertner, Fine, Good & Mizner, Boston, Mass. was on brief, for petitioner, appellant.

Paula J. DeGiacomo, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for respondents, appellees.

Before BOWNES and SELYA, Circuit Judges, and PETTINE,* Senior District Judge.

SELYA, Circuit Judge.

Alan Lefkowitz, M.D., petitioner-appellant, asks us to review orders of two different judges of the United States District Court for the District of Massachusetts, the net effect of which was to frustrate his belated attempt to have a state conviction screened by means of habeas corpus, 28 U.S.C. §§ 2241–54, for federal constitutional error. Having surveyed the scene, we affirm the judgments entered below.

I.

In June 1981, the appellant, then a thirty year old physician, was convicted, along with two other men, of rape. He was sentenced to imprisonment for a term of three to five years (six months to be served, the balance suspended), together with a period of probation. In the after-math of this conviction, Lefkowitz's license to practice medicine in Massachusetts was revoked. He and his codefendants appealed the convictions to the state's highest tribunal, but without success. *See Commonwealth v. Sherry*, 386 Mass. 682, 437 N.E.2d 224 (1982). On July 7, 1982, the same day that he began serving his jail term,[1] Lefkowitz filed a petition for writ of habeas corpus in the federal court (*Habeas I*). On the authority of *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), the district court (Keeton, J.) ruled that the petitioner had failed to exhaust, within the purview of 28 U.S.C. § 2254, one of the two claims upon which his habeas application rested. Accordingly, Lefkowitz was properly confronted with the alternative of amending his petition (to delete the neoteric claim) or revisiting the state courts (to exhaust his remedies fully). *See, e.g., Rose*, 455 U.S. at 520–21, 102 S.Ct. at 1204. The appellant elected to return to state court and Judge Keeton dismissed his federal habeas petition without prejudice. That dismissal was not appealed.

While Lefkowitz was engaged in the pursuit of his unexhausted claim in the Massachusetts courts, he completed serving his sentence. He was unconditionally released from state custody when his probationary period expired on March 20, 1984. Although the parties trade allegations as to who—if anyone—was responsible for the relative languor which attended the proceedings in federal district court and for the delay in postconviction review in the state judicial system, we deem that wrangling to comprise a nonissue; we will not gratuitously troll in such troubled waters. Suffice it to say that, when the remedial gamut had been run in the Commonwealth's courts, Lefkowitz filed a new application for habeas relief (*Habeas II*) in the federal district court on April 18, 1986.[2]

---

* Of the District of Rhode Island, sitting by designation.

1. The appellant's sentence structure played out in the following manner: on July 7, 1982, he began serving the committed portion of his sentence; with credit for "good time," he was released from the penitentiary in December of that year, and started his probationary term on January 1, 1983. His probation was finished no later than March 1984.

2. It is, we think, not without significance that the appellant's able counsel filed an entirely fresh application. The attempt to explain away this tactic is altogether unconvincing. Had Lefkowitz seriously cherished the belief that the district court retained jurisdiction when it dis-

As a new case, *Habeas II* was assigned to Judge Skinner through the district's random lottery. The court summarily dismissed *Habeas II* on initial perscrutation, *see* Rule 4, 28 foll. § 2254, finding that it was an original proceeding in which the applicant lacked standing because he was not "in custody" as of the filing date.

Lefkowitz struck back on two fronts at once. He asked Judge Skinner to reconsider the dismissal of *Habeas II* and also asked Judge Keeton to amend the order dismissing *Habeas I* to indicate that the court had retained jurisdiction over the proceeding when *Habeas I* was jettisoned. Neither motion bore fruit. These appeals ensued.

## II.

The Great Writ, as habeas corpus has come to be known, is not casually available. In order to interest a federal court in using this power, one who protests his treatment in state criminal proceedings must be "in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254. This precondition traces its ancestry on this side of the Atlantic to the very first federal habeas statute, 1 Stat. 82 (1789), and derives from the historic practice in England. For centuries, the essence of the procedure has been to direct the prerogative writ "to him who hath the custody of the body." *Anon.*, 78 Eng. Rep. 27 (1586). As the Supreme Court has declared, this proviso "is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty." *Hensley v. Municipal Court*, 411 U.S. 345, 351, 93 S.Ct. 1571, 1574, 36 L.Ed.2d 294 (1973). And, if the custody requirement is to continue to be a meaningful one, definition of the term must be constrained by its natural legal boundaries.

■ To be sure, there has been some subtle shifting since Chief Justice Marshall declared the "great object" of the writ to be "the liberation of those who may be imprisoned without cause," and likened it

to "a writ of error, to examine the legality of the commitment." *Ex parte Watkins*, 28 U.S. (3 Peters) 193, 202, 7 L.Ed. 650 (1830). In the intervening years, the meaning of "custody" has been broadened by the courts so that, in the § 2254 context, it is no longer limited to *physical* custody. *See Justices of the Boston Municipal Court v. Lydon*, 466 U.S. 294, 301, 104 S.Ct. 1805, 1809, 80 L.Ed.2d 311 (1984) (pretrial release on personal recognizance constitutes custody); *Hensley*, 411 U.S. at 349–51, 93 S.Ct. at 1573–74 (release on personal recognizance pending execution of sentence constitutes custody); *Jones v. Cunningham*, 371 U.S. 236, 240–43, 83 S.Ct. 373, 375–77, 9 L.Ed.2d 285 (1963) (parole tantamount to custody). Nevertheless, one constant has not changed over time: he who seeks the succor of habeas corpus must be subject then and there to "restraints not shared by the public generally," *Jones v. Cunningham*, 371 U.S. at 240, 83 S.Ct. at 376, and "at the least, to some type of continuing governmental supervision." *Tinder v. Paula*, 725 F.2d 801, 803 (1st Cir.1984). Although a habeas petition does not automatically become moot if custody abates after the case is brought and while it is still pending, *Carafas v. LaVallee*, 391 U.S. 234, 237–38, 88 S.Ct. 1556, 1559, 20 L.Ed.2d 554 (1968), that is not Lefkowitz's lot. Rather, the appellant, insofar as *Habeas II* is concerned, runs up against the principle that "a sentence that has been fully served does not satisfy the custody requirement of the habeas statute, despite the collateral consequences that generally attend a criminal conviction." *Tinder*, 725 F.2d at 803.

In many respects, this appeal is a fair congener to *Tinder;* the cases possess important similarities. In *Tinder*, the appellant, then serving a suspended sentence, filed a habeas corpus petition which was promptly dismissed because he had neglected to explore available state court remedies. After the exhaustion requirement had been fulfilled, the applicant returned to

missed *Habeas I,* he would doubtless have applied to reopen that proceeding, rather than

initiating a new suit.

federal court. By then, he had completed serving his sentence. Although Tinder had been in custody when he filed his initial petition, that was not so the second time around. We held, therefore, that he lacked standing to pursue his quest for habeas relief. 725 F.2d at 803–06. Lefkowitz, despite his valiant efforts to separate himself from the rationale of *Tinder*, cannot split the atom.

Insofar as the appellant urges that "custody" remains attached to a degree sufficient to warrant the exercise of federal habeas jurisdiction even after the expiration of his state sentence, he is whistling past the graveyard. His chief talking point is that the rape conviction led to the revocation of his license to practice medicine. His license remains revoked and, as he sees it, any chance of restoration effectively depends upon having the conviction erased. This concatenation of circumstances, he contends, amounts to a restraint on liberty severe enough to constitute "custody" for habeas purposes. Passing one obvious flaw in Lefkowitz's argument—it is nowhere clear from the record that vacatur of his conviction will *ipso facto* insure restoration of his medical license—we must disagree with his basic premise.

■ Habeas jurisprudence has traditionally been concerned with liberty rather than property, with freedom more than economics. We have regularly held that "some vaguely defined discrimination or some sort of economic duress" resulting from a conviction does not, by itself, confer standing to invoke the remedy of habeas corpus. *Matter of Matheisel*, 289 F.2d 824 (1st Cir.1961) (per curiam). He who seeks the writ must be incarcerated, or under imminent threat of incarceration, in order to meet the custody requirement of the habeas statute. *Tinder*, 725 F.2d at 803–04.

As the Court has put it:

Since habeas corpus is an extraordinary remedy whose operation is to a large extent uninhibited by traditional rules of finality and federalism, its use has been limited to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe nor immediate.

*Hensley*, 411 U.S. at 351, 93 S.Ct. at 1574. *Accord Bailey v. United States Commanding Officer*, 496 F.2d 324, 325 (1st Cir.1974).

■ Viewed from this perspective, the revocation of a medical license by a state agency, although unquestionably a substantial blow to an individual desirous of practicing the healing arts in the Commonwealth, does not constitute the type of grave restraint on liberty or the sort of ongoing governmental supervision which are unavoidable prerequisites of actionable "custody." Adverse occupational and employment consequences are a frequent aftermath of virtually any felony conviction. Government regulation, in the nature of the imposition of civil disabilities—say, loss of voting rights or disqualification from obtaining a gun permit—often follows a defendant long after his sentence has been served. To hold that the custody requirement is so elastic as to reach such sequellae would be to stretch the concept of custody out of all meaningful proportion, to render it limp and shapeless—in the last analysis, to make habeas corpus routinely available to all who suffer harm emanating from a state conviction, regardless of actual custodial status. We abjure such an expansive rule.

■ In so holding, we join a consentient line of authority to like effect. There are no magic mirrors: even grievous collateral consequences stemming directly from a conviction cannot, without more, transform the absence of custody into the presence of custody for the purpose of habeas review. *E.g., Ginsberg v. Abrams*, 702 F.2d 48, 49 (2d Cir.1983) (per curiam) (judge's removal from the bench, loss of right to practice law, and disqualification from licensure as real estate or insurance agent insufficient to constitute "custody" for habeas purposes); *Harvey v. South Dakota*, 526 F.2d 840, 841 (8th Cir.1975) (per curiam) (inability to pursue certain professions or to possess firearms, and status of recidivist if another crime committed, do not add up to "custody"), *cert. denied*, 426 U.S. 911, 96

S.Ct. 2236, 48 L.Ed.2d 837 (1976); *Furey v. Hyland*, 395 F.Supp. 1356, 1360 (D.N.J. 1975) (potential loss of medical license, damage to reputation, and inability to resume public office not "custody," absent recognized restraints on liberty), *aff'd mem.*, 532 F.2d 746 (3d Cir.1976).[3]

For these reasons, we conclude that Lefkowitz, who was well past the end of his custody when *Habeas II* was filed, had no standing to pursue the Great Writ at that time. Thus, Judge Skinner was plainly correct as a matter of law both in summarily dismissing the petition and in declining to reconsider and rescind the dismissal order.

### III.

The appellant has a second string to his bow. Notwithstanding the untimeliness of *Habeas II*, he argues that the district court retained jurisdiction over his case—expressly or by fair implication—when *Habeas I* was dismissed. Accordingly, he asserts that Judge Keeton should have permitted the reopening of *Habeas I* in 1986 (after Lefkowitz had at long last fulfilled the exhaustion requirement).[4]

■ The petitioner's argument prescinds in the first instance from *Tinder*, a case where we declined to find retention of jurisdiction "in the absence of an expression of retention in the dismissal order or any request for retention ... at the time the first petition was dismissed." 725 F.2d at 805. This statement is of scant solace to the petitioner. Lefkowitz admits that no such explicit request was made on his behalf at the time of the original proceedings before Judge Keeton, and we are totally unable to find any expression of a retention of jurisdiction in the district court's orders. The

colloquy to which the appellant points is equally unenlightening. Accordingly, we need not reach—and express no opinion on—the more difficult question of whether a federal district court *can* retain jurisdiction when it dismisses a habeas petition on exhaustion grounds. *See Tinder*, 725 F.2d at 805.

The appellant's contention that there was an express retention of jurisdiction is premised largely on language in the rescript adumbrating the dismissal of *Habeas I*, where Judge Keeton wrote that "the entire habeas petition will be dismissed without prejudice, leaving petitioner free ... to exhaust state remedies and, if not successful, to petition again in this court." Lefkowitz now asserts that he relied on this statement as an explicit retention of jurisdiction, governing his subsequent conduct. Fairly viewed, we can best characterize Lefkowitz's self-styled reliance as an attempt at *post hoc* rationalization.

The phraseology to which the appellant adverts is, at best, merely a restatement of his rights under the circumstances then extant, not even close to a guarantee or assurance of continuing (special) access to the district court in the face of changing circumstances. Judge Keeton did no more than to point out that, if Lefkowitz was not successful in obtaining redress in the state courts and if the burdens of custody continued to infringe substantially upon his liberty, he could then approach the district court anew, having cleared the exhaustion hurdle. "Free ... to petition again" in the federal court, to us, does not sound the same as "entitled ... to petition again irrespective of custodial status." To try to read into this forthright statement the in-

---

**3.** To be sure, collateral consequences may be relevant to the question of whether a petition for habeas corpus becomes moot when custody abates while the application is pending. *See, e.g., Carafas v. LaVallee, supra; Carter v. Procunier*, 755 F.2d 1126, 1129–30 (5th Cir.1985). Inasmuch as Lefkowitz was not in custody when he instituted *Habeas II*, however, we have no occasion to march onto the mootness battleground.

**4.** The appellant argues, in the alternative, that *Habeas II* should be deemed to relate back to the

time when he was in prison, *i.e.*, when he filed *Habeas I*. This is merely another way of framing the same point. Therefore, nothing would be gained by an independent consideration of this alternative. If one's concern is for vehicular clearance, it is of metaphysical interest only whether the turnpike authority raises the overpass or lowers the roadbed. Similarly, whether we address the problem in terms of the ostensible right to have *Habeas I* reopened or to have *Habeas II* relate back, the dimensions of the legal issue remain exactly the same.

terpretative nuances hawked by the appellant would require a set of mental gymnastics far too acrobatic for law and logic. We will not encourage parties to twist the contours of plain meaning. And, if they persist in doing so, we will not rescue them from the predictable consequences of such foolhardiness. *Compare Allied International, Inc. v. International Longshoremen's Ass'n, AFL–CIO,* 814 F.2d 32, 36 (1st Cir.1987) (where defendants drew an unsupportable conclusion from the language of a pleading, "they acted without a reasonable basis—and thus, at their peril").

Lefkowitz cites a series of three Fifth Circuit cases which he tells us hold that similar language in a district court decree constituted an expression that jurisdiction was retained. *See Boyer v. City of Orlando,* 402 F.2d 966 (5th Cir.1968); *Brent v. White,* 398 F.2d 503 (5th Cir.1968), *cert. denied,* 393 U.S. 1123, 89 S.Ct. 998, 22 L.Ed.2d 130 (1969); *Peters v. Rutledge,* 397 F.2d 731 (5th Cir.1968). We find his reliance to be mislaid. In *Boyer,* the court retained jurisdiction over the habeas proceedings while the petitioner returned to state court to exhaust his remedies, but it did so by ordering the petitioner released on bail (thus keeping him "in custody") until the state court completed hearing his case. 402 F.2d at 968. In *Brent,* where a death sentence hung in the balance, the court expressly retained jurisdiction while the habeas petitioner returned to state court to exhaust his remedies, writing in no uncertain terms: "we will retain jurisdiction in order to continue the stay of execution." 398 F.2d at 507. In *Peters,* the court indeed used language to the effect that, after exhausting state court remedies, the applicant could "return to the Federal Court for its inescapably independent judgment on federal issues." 397 F.2d at 741. Yet, the context in which the statement was made had to do with the question of the propriety of *successive* state/federal petitions rather than the maintenance of a federal string pending exploration of state remedies. *See Pryor v. Beto,* 460 F.2d 306 (5th Cir.1972) (per curiam) (citing *Peters* for the proposition that a subsequent federal petition following exhaustion of state remedies is not barred on res judicata grounds). The *Peters* court gave no indication that it intended the quoted comment to constitute a *retention* of jurisdiction.

Lefkowitz makes much of the fact that, at the time *Habeas I* was dismissed, he was near the temporal end of his sentence. He argues that Judge Keeton understood that the appellant would be unable to re-petition in federal court unless jurisdiction was retained, and thus must perforce have intended that his order constitute a means of holding onto federal jurisdiction. Yet, the record belies this freewheeling assumption. We have carefully examined the nisi prius roll and find absolutely no indication of such knowledge or intent. To the contrary, it seems clear that Lefkowitz never brought the point to the attention of the judge. We have said before that "the district court speaks to us primarily through its decrees...." *Advance Financial Corp. v. Isla Rica Sales, Inc.,* 747 F.2d 21, 26 (1st Cir.1984). In the case at bar, Judge Keeton's order contained not the slightest ambiguity; it was not only barren of any reference to retaining the case, but it was equally barren of any reference to the chronology of events which Lefkowitz now claims was the cynosure of all eyes. There is no basis for the claim that the court had enjoyed a preview of coming attractions.

■ If any lingering doubt attended the matter, we can look in this instance to the author's own statement of his intent. As we have indicated previously, *e.g., Advance Financial Corp.,* 747 F.2d at 26 & n. 10, uncertainty as to the meaning and intendment of a district court order can sometimes best be dispelled by deference to the views of the writing judge. Here, when the petitioner moved in 1986 to reopen *Habeas I* and/or to clarify the dismissal order therein, Judge Keeton expressly declined the invitation to rewrite the order so as to profess *nunc pro tunc* a retention of jurisdiction. Indeed, the judge noted that, to his mind, retention would have been inconsistent with the "underlying purposes of the exhaustion requirements." It was, at the least, within Judge Keeton's discretion, *see Tinder,* 725 F.2d at 805, to refuse to

keep jurisdiction over *Habeas I.* We find nothing in either the language which he employed at the time or in the record of the original proceeding which buttresses the argument that jurisdiction was retained. No spoor were left for the cognoscenti to mark the trail in that direction. Given the court's wording and the flow of events as they transpired, the appellant's claim of express retention smacks of wishful thinking.

As a subset of this exhortation, Lefkowitz asserts that, even if the district court did not expressly retain jurisdiction over *Habeas I*, retention of jurisdiction should be implied based upon the facts and circumstances of the case. But, this assertion cannot withstand routine scrutiny. It is the law of this circuit that, if a string is to be left intact, "it is advantageous for the courts and the parties to know beforehand [that] jurisdiction over the claim will be retained." *Tinder*, 725 F.2d at 805. The district courts, aware of this principle, will likely not mince words if they desire to preserve jurisdiction. Thus, we must be correspondingly cautious in implying retained jurisdiction after the fact.

Assuming without deciding that there may be a rare case which demands such an implication, it is certainly not this one. There is little reason to infer retention in a case where the petitioner, who was represented by seasoned counsel throughout the proceedings, did not timely request that jurisdiction be kept alive. Moreover, no circumstances exist which make this case so extraordinary that the rulebook should be discarded. To imply retention here would be tantamount to holding that a "timely-filed habeas petition automatically gives the district court retained jurisdiction to hear the claim even if custody ends before the petition is refiled provided the original petition was dismissed solely for failure to exhaust state court remedies." *Tinder*, 725 F.2d at 805. We rejected precisely that point of view in *Tinder*. *See id.; accord Kravitz v. Pennsylvania*, 546 F.2d 1100, 1102–03 (3d Cir.1977). Having done so, recently and for good reason, we see no warrant to reverse ourselves and embrace the postulate for Lefkowitz's

sake. And on this basis, there was likewise no mandatory relation-back when *Habeas II* was docketed.

 Lefkowitz bemoans the fact that the district court, in dismissing his original petition, indicated that the unexhausted claim was "constitutionally compelling." Unless jurisdiction is implied, he laments, all opportunity to have that claim (or his other claims) heard by a federal court will be lost. This dolorousness points up a fundamental misconception. Federal habeas review is not an academic exercise designed to solve puzzling legal questions. It is a means of emergency relief in straitened situations, a means which ought not to be energized needlessly once the emergency—"custody," as we have defined it—abates. We cannot forget that "the traditional meaning and purpose of habeas corpus [is] to effect release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 486 n. 7, 93 S.Ct. 1827, 1834 n. 7, 36 L.Ed.2d 439 (1973). *Accord Johnson v. Moran*, 812 F.2d 23 (1st Cir.1987) (per curiam); *cf. Medley*, 134 U.S. 160, 173–74, 10 S.Ct. 384, 388, 33 L.Ed. 835 (1890). And in the jurisdictional sense, the appellant is not in custody; he has no existing shackles for us to sever.

The result with which Lefkowitz is now faced, *i.e.*, the inability to present legal arguments anent his guilt or the fairness of his trial to a federal court, is not the sort of hardship that the habeas power was designed to redress. After all,

> [W]e must ... attach some meaning to the Congressional limitation on habeas corpus jurisdiction; Congress did not authorize the federal courts to be roving commissions to correct all constitutional errors in state criminal proceedings.

*Hanson v. Court of the First Judicial Circuit of Illinois*, 591 F.2d 404, 407 (7th Cir.), *cert. denied*, 444 U.S. 907, 100 S.Ct. 220, 62 L.Ed.2d 143 (1979).

The Great Writ is powerful medicine. Congress has prescribed, however, that it should be administered only in cases in which a classic set of symptoms appears. That prescription tracks the historical foundation of habeas corpus. We must be

watchful of cases, like the present one, that try to employ the writ, heedless of the conditions under which its remedy may rightfully be dispensed, as a general panacea for whatever ails a given petitioner.

### IV.

In summary, we find that, at the time the appellant's initial petition for habeas corpus was dismissed without prejudice in the district court, jurisdiction was not retained either expressly or impliedly. We further find that Lefkowitz was not in custody when he filed his second application for habeas corpus in the district court.

Given these findings, it is plain that Judge Keeton did not err either in refusing to amend the dismissal order in the first habeas proceeding or in declining to reopen that proceeding. It is equally plain that Judge Skinner correctly dismissed the later habeas petition for want of federal jurisdiction. For the reasons which we have stated, the judgments below are each

*Affirmed.*