### In re GRAND JURY PROCEEDINGS.

#### Appeal of John DOE.

#### No. 89–1238.

United States Court of Appeals,
First Circuit.

Submitted March 27, 1989.

Decided April 7, 1989.

---

George F. Gormley, P.C., Ellen A. Howard, Boston, Mass., and Gormley, Howard & Goodale on brief, for appellant.

Alexandra Leake, Asst. U.S. Atty., and Jeremiah T. O'Sullivan, U.S. Atty., Boston, Mass., on brief, for appellee.

Before BOWNES, BREYER and SELYA, Circuit Judges.

PER CURIAM.

The appellant was subpoenaed to testify before a grand jury on March 2, 1989. The appellant's attorney indicated to government counsel that the appellant would refuse to testify on the basis of his privilege against self-incrimination. Therefore, on February 28, 1989, in advance of the appellant's scheduled appearance, the government applied to the district court for an order of use immunity, pursuant to 18 U.S. C. §§ 6002 and 6003, directing the appellant to testify and produce evidence before the grand jury notwithstanding the appellant's privilege against self-incrimination. The district court granted the government's request.

The court order, in part pertinent to this appeal, stated:

"It is further ordered, as provided in 18 U.S.C. § 6002, that this Order shall become effective only if, after entry of this Order, [appellant] shall refuse to give testimony or provide other information before the Grand Jury on the basis of his privilege against self-incrimination *and this Order is communicated to him by the person presiding over the Grand Jury*." (Emphasis added).

The above language of the court order, quoted above, essentially tracks the language of 18 U.S.C. § 6002.

"Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—(1) a court or grand jury of the United States,

.    .    .    .    .

*and the person presiding over the proceeding communicates to the witness an order issued under this part,* the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order." (Emphasis added.)

On March 2, 1989, the appellant appeared before the grand jury. The appellant was accompanied by counsel, although, as is the practice, counsel was not permitted in the grand jury room itself. Before he entered the grand jury room, he received from a government attorney a copy of the district court order of immunity.[1] Once in the grand jury room, the appellant answered some questions put to him; as to other questions, the appellant invoked his fifth amendment privilege against self-incrimination. The assistant United States attorney then read the district court order of immunity to him and that order was marked by the grand jury foreperson as an exhibit. Questioning of the appellant resumed, but the appellant continued to assert his fifth amendment privilege. The appellant was then excused.

The next day, March 3, 1989, the government petitioned the district court for an order adjudging the appellant in civil contempt of the February 28th court order. The district court held a hearing on March 10, 1989. At that hearing, the appellant's counsel moved that the petition for contempt be dismissed with prejudice. Counsel argued that the "person presiding" over the grand jury proceeding, as referred to in § 6002, as well as in the court order of February 28th, is the grand jury foreperson. However, the appellant argued, the order of immunity was read to him by government counsel. It was not, he contended, "communicated" to him by the person presiding over the grand jury, i.e., the foreperson, as required by § 6002 and the court order itself. In the appellant's view, neither the provisions of § 6002, nor those of the February 28th order, had been followed. Therefore, the immunity purportedly conferred by the order, pursuant to § 6002, was ineffective; it could not displace his privilege against self-incrimina-

tion; and he had just cause to refuse to respond to the questions asked.

The district court granted the petition for contempt and denied bail pending appeal. The appellant filed a notice of appeal and moved in this court for bail pending appeal. We denied bail and ordered expedited briefing. See 28 U.S.C. § 1826(b); Loc. R. 9.

On appeal, the appellant reiterates the argument raised below; i.e., he complains that the person presiding over the grand jury proceeding did not communicate the court order of immunity to him. Those sections of Title 18 which concern the immunity of witnesses, i.e., 18 U.S.C. §§ 6001–6005, do not define "the person presiding over the proceeding" or indicate how that person is to "communicate" the district court order of compulsion to the witness. We therefore have examined the legislative history for guidance in interpreting these phrases.

The legislative history underpinning the enactment of these statutory immunity provisions [2] indicates a concern with past practices of unwisely or unwittingly bestowing immunity from prosecution on a witness and, consequently, a primary motivating intent to provide use immunity (i.e., restriction on the use of the compelled testimony) rather than transactional immunity (i.e., absolute immunity from prosecution). See House Comm. on the Judiciary, Organized Crime Control Act, P.L. 91–452, H.Rep. No. 91–1549, 91st Cong., 2d Sess., reprinted in 1970 U.S.Code Cong. & Admin. News 4007, 4008, 4017–18; see also generally Measures Relating to Organized Crime: Hearings on S. 30, S. 974, S. 975, S. 976, S. 1623, S. 1624, S. 1861, S. 2022, S. 2122, and S. 2292 Before the Subcomm. on Criminal Laws and Procedures of the Senate Comm. on the Judiciary, 91st Cong., 1st

---

**1.** The district court order compelled testimony or other information and provided immunity from the use of that testimony or information. Such orders are sometimes referred to as an order to testify, an order of compulsion, or an immunity order. We have used these terms interchangeably in this opinion. Similarly, although we at times refer to the district court order as an order to testify, it is understood that

the order as issued encompassed more than just oral testimony.

**2.** "The statute is a product of careful study and consideration by the National Commission on Reform of Federal Criminal Laws, as well as by Congress." Kastigar v. United States, 406 U.S. 441, 452 n. 36, 92 S.Ct. 1653, 1660 n. 36, 32 L.Ed.2d 212 (1972).

8

*Sess. (1969)* (hereinafter Organized Crime Hearings); *Federal Immunity of Witnesses Act: Hearing on H.R. 11157 and H.R. 12041 Before Subcomm. No. 3 of the House Comm. on the Judiciary,* 91st Cong., 1st Sess. (1969) (hereinafter Fed. Imm. of Witnesses Hearing).

■ Additionally, a more efficient procedure for the issuance of a direction to testify was thought desirable. *See* Organized Crime Hearings, 287 (statement of Rep. Richard H. Poff, Vice–Chairman of the National Commission on Reform of Federal Criminal Laws); 317–18 (National Commission on Reform of Federal Criminal Laws, Second Interim Report dated March 17, 1969 (hereinafter Report on Reform of Fed.Crim.Laws)); 326 (statement of Richard A. Green, Esq., Deputy Director, National Committee on Reform of Criminal Laws); Fed.Imm. of Witnesses Hearing, 50 (statement of Prof. Robert G. Dixon, Jr., consultant, National Committee on Reform of Federal Criminal Laws); 70 (statement of Mr. Green). Previously, government counsel could anticipate that a witness before a grand jury would invoke his fifth amendment privilege. Nonetheless, the witness was first required to appear, take his oath, be asked a question, and then claim the privilege. At that point, the proceeding was halted until the witness appeared before a district court judge who would enter an order to testify. The witness then went back to the proceeding, which was resumed, and would thereafter testify or refuse to testify and risk the consequences. Organized Crime Hearings, 326 (statement of Mr. Green). The "procedural innovation," (which ultimately was enacted as 18 U.S.C. § 6003), was to permit immunity orders to be obtained prospectively. *Id.* at 287 (statement of Rep. Poff). When the claim of a fifth amendment privilege is anticipated, the order to testify can be issued in advance of the witness' appearance. *Id.* Obtaining in advance the district court order compelling the testimony thereby eliminates the delay and inconvenience which, of necessity, resulted when the proceeding was interrupted to secure the order. *Id.* The purpose of obtaining immunity orders prospectively is "proce-

dural efficiency." Organized Crime Hearings, 317 (Report on Reform of Fed.Crim. Laws). This procedure was promoted as eliminating some of the "unnecessary ritual." *Id.* at 326 (statement of Mr. Green). This is the procedure which was utilized in the case at bar. Anticipating, based on communication from the appellant's counsel, that the appellant would invoke his privilege against self-incrimination, government counsel obtained, in advance of the appellant's appearance, the district court order compelling his testimony.

It is at this point that the statutory phrases at issue in this case become relevant. Under prior practice, neither the point in time at which the immunity order became effective, nor notification to the witness of the district court order compelling his testimony, was an issue since that order was obtained in the presence of the witness and after he had invoked his privilege against self-incrimination. The grand jury proceeding in which the witness invoked his fifth amendment privilege was interrupted and the witness was brought before a district court judge where the order to testify was then sought.

■ Permitting immunity orders to be obtained in advance of a witness' appearance before a grand jury, as the revised procedure proposed, however, did present such issues. Although obtained in advance of the witness' appearance, it was proposed (and ultimately was adopted) that the order of immunity only become effective when (1) the witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information and (2) "the person presiding over the proceeding communicates to the witness" the district court order compelling such testimony or information. 18 U.S.C. § 6002. There is but little reference to, and virtually no explanation of, the above-quoted term in the course of the legislative hearings. There is evidence that the drafters of the legislative proposal which subsequently became § 6002 understood that the person presiding, in the context of a grand jury proceeding, was the grand jury foreperson.

"In subsection (b) of section (1), the proposed draft authorizes the issuance (by the appropriate authority) of a direction to the witness to testify or produce other information, in advance of the time when the witness actually asserts his privilege against self-incrimination. It is made clear, however, that the direction does not become effective, *i.e.,* immunity is not conferred, until the witness does assert his privilege *and the direction to testify is communicated to him by the presiding official at the inquiry—the foreman of the grand jury,* the hearing officer at the administrative proceedings, the chairman of the congressional committee or subcommittee."

Organized Crime Hearings, 317 (Report on Reform of Fed.Crim.Laws). Other sources, as well, suggest general support for the appellant's contention that the person presiding over the grand jury is considered to be the foreperson. *See* Handbook for Federal Grand Jurors 9, prepared by the Judicial Conference Committee on the Operation of the Jury System (1980) ("[a]fter the proper number of persons have been qualified as grand jurors, the court will appoint one of them to be the foreman, or presiding officer, of the grand jury"); United States Department of Justice, Criminal Division, Federal Grand Jury Practice Manual, Vol. I, I.C.4.c. at p. 6 (1983) ("[t]he foreman presides over the grand jury and serves as its spokesman.") Based on this support, we shall accept, for purposes of this appeal, the appellant's contention that it is the grand jury foreperson who presides over the grand jury proceeding. *Cf. In re Sealed Case,* 776 F.2d 335, 337–38 (D.C.Cir.1985) (Deputy Counsel of President's Commission on Organized Crime was person in charge on commissions's behalf of the sessions at which appellant's deposition was sought and as such plainly was "the person presiding over the proceeding" for purposes of § 6002).

We reject, however, the appellant's contention that he was justified in refusing to testify notwithstanding the district court order of compulsion because, according to the appellant, the order was not communicated to him by the jury foreperson. While the appellant argues that the jury foreperson did not communicate the district court order of compulsion and immunity to him, he does not suggest how that communication *should* have occurred. He complains that the order was read to him by government counsel. Insofar as this complaint suggests that § 6002 *requires* that the jury foreperson *read* the order of compulsion to the witness, we reject the suggestion. First, the word used in § 6002 is "communicates" and "communicates" encompasses far more than solely an oral recitation. For example, communicate is defined as: "to make known; inform a person of; convey the knowledge or information of; impart; transmit; to speak, gesticulate, or write to another to convey information." Webster's Third New International Dictionary of the English Language, Unabridged (1981).

Second, although the legislative history on this aspect of § 6002 is relatively sparse, we think that what is there indicates an intent primarily focused on ensuring that the witness is informed of the existence of the previously-obtained court order (a concern not implicated under prior practice), rather than an intent to require a particular rigid manner of carrying out that notification.

"We also believe that a procedural innovation which we have recommended should have general application in the federal system. This innovation would permit issuance of an order to testify prior to the time the witness has appeared and claimed his privilege; but the immunity grant would not become effective until he did claim his privilege *and the direction to testify has been communicated to him by the person presiding over the inquiry.* Frequently it is known before a proceeding has been convened that the witness intends to assert his privilege. Availability of the procedures I have outlined should avoid unnecessary delay and inconvenience in many instances." Organized Crime Hearings, 287 (statement of Rep. Poff) (emphasis added).

.  .  .  .  .

"We suggest in the Commissioner's proposal that the claim of the privilege can be anticipated and the direction to testify, the order to testify, can be issued contingent upon the witness claiming his privilege. *He will then be notified of the fact that he has been granted immunity under the provisions of this section.* We think that that will eliminate some of the unnecessary ritual." *Id.* at 326 (statement of Mr. Green) (emphasis added).

. . . . .

"On page 2 of the bill you will find section 6001 [identical to what is now codified at 18 U.S.C. § 6002]. That section would provide that when a witness refuses on the basis of his privilege against self-incrimination to testify or to provide other information, *and the witness is presented with an order of the court compelling his testimony, and granting him immunity from the use of such testimony and its fruits,* then the witness must testify under pain of contempt of court." Fed.Imm. of Witnesses Hearing, 30 (statement of Rep. Poff) (emphasis added).

. . . . .

"[P]rovision is made for obtaining immunity orders in advance of needed use, for the sake simply of administrative efficiency. They are not operative until the witness invokes the Fifth Amendment, *and the order is read to him,* and he then testifies responsively." *Id.* at 58 (statement of Prof. Dixon) (emphasis added).

. . . . .

"[U]nder our proposal this ritual can be shortcut and the order can be issued in advance *and then given to the witness by the presiding officer of the body— that would, say, be the foreman of the* *grand jury—at the appropriate time."* *Id.* at 70 (statement of Mr. Green).

Having the jury foreperson read the district court order compelling the appellant's testimony and conferring use immunity doubtless complies with the language of § 6002. We do not believe, as the appellant implicitly argues, that this procedure is the only manner of complying with § 6002. The grand jury foreperson in this case marked the district court order of immunity as a grand jury exhibit after it was read to the appellant by government counsel. This, alone, may have sufficed. But, there was more. We see no reason why it cannot be said that the presiding officer, *i.e.,* the jury foreperson, "communicated" the order to the appellant by acquiescing in government counsel's reading of it (or even, as may be the case, by actually designating government counsel to read it). The appellant is wrong in suggesting at page 6 of his brief that the jury foreperson has some role in determining either the necessity or propriety of conferring use immunity on the appellant. That determination rests solely with government counsel. *United States v. Davis,* 623 F.2d 188, 192 (1st Cir.1980). The responsibilities of a federal grand jury foreperson are "essentially clerical in nature." *Hobby v. United States,* 468 U.S. 339, 344, 104 S.Ct. 3093, 3096, 82 L.Ed.2d 260 (1984).

Without serious question, the actions which we have described, in combination, communicated the order to the appellant sufficiently to satisfy the requirement of § 6002.[3] The grand jury foreperson thereby complied satisfactorily with what we conclude was the primary purpose underlying this particular provision of § 6002, that is, to ensure that the witness was notified of the existence of a previously-obtained district court order compelling his testimony and conferring use immunity. To construe § 6002 as the appellant suggests, *i.e.,*

---

**3.** To the extent that appellant relies upon the specific text of the district court's immunity order, the point is resolved by the district judge's later ruling (finding appellant in contempt). We have noted on several occasions that writing judges are the most qualified explicators of their own orders. *See, e.g., Martha's Vineyard Scuba Headquarters, Inc. v. Unidenti-* *fied, Wrecked and Abandoned Steam Vessel,* 833 F.2d 1059, 1066–67 (1st Cir.1987); *Lefkowitz v. Fair,* 816 F.2d 17, 22–23 (1st Cir.1987). By granting the government's motion for contempt, the district judge demonstrated that he intended the "communication" language in his order to be interpreted as broadly as the statute upon which it was based.

that no court order of immunity is valid unless *read* to the witness by the grand jury foreperson, would, ironically, impart an artificial ritual to a statutory provision intended to remove an "unnecessary ritual." Organized Crime Hearings, 326 (statement of Mr. Green).

Finally, we note that, although accompanied by counsel to his grand jury appearance, the appellant did not at that time object that the order of immunity was not communicated to him by the grand jury foreperson. If he had, there is nothing to suggest that, although not necessarily required to, the grand jury foreperson would not have obliged a request by the appellant that the foreperson himself read the order. (The appellant makes no argument that the fact that government counsel initially read the order to him somehow retroactively and fatally taints a previously-obtained order of immunity such that the order cannot be "rehabilitated," but requires the obtaining of a new court order. In any event, in light of our conclusion that § 6002 was complied with, such an argument would be unavailing.) The appellant first raised this alleged non-compliance with § 6002 at the hearing on the petition for contempt after having refused to testify, notwithstanding the court order requiring him to do so. The fact that the appellant failed to raise his objection when there was an opportunity to resolve it without then having to proceed to the stage of petitioning for contempt reinforces our conclusion that his complaint is more ritual than substance and, simultaneously, suggests that the argument, belatedly thought of, really serves to advance an underlying purpose of delaying the consequences of an unlawful refusal to testify. *Cf. In re Sealed Case*, 776 F.2d at 338 (even if Commission's orders to testify had been improperly communicated to appellant, that would not excuse his disobedience, with full knowledge of his

immunity, of the District Court's subsequent order to testify).

The appellant's refusal to testify based on his privilege against self-incrimination despite the district court order of immunity was unjustified. The judgment of the contempt was proper.[4]

*Affirmed.*

---

4. The government suggests that, in any event, the appellant's professed doubts about the effectiveness of the district court order of immunity could not support a refusal to testify because once it (the government) purported to immunize the appellant, it would be estopped from attempting to use his testimony against him. In light of our analysis, *supra,* we need not address the merits of this argument.