# United States Court of Appeals
## For the First Circuit

No. 25-1354

SANDRA NATASHA ST. JOHN,

Petitioner, Appellant,

v.

ANDREA JOY CAMPBELL,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Indira Talwani, U.S. District Judge]

Before

Barron, Chief Judge,
Lipez and Rikelman, Circuit Judges.

Michael A. Ugolini for appellant.
Tara L. Johnston, Assistant Attorney General, with whom Andrea Joy Campbell, Attorney General of Massachusetts, was on brief, for appellee.

April 29, 2026

**RIKELMAN, <u>Circuit Judge</u>.** Sandra Natasha St. John served a decade in prison after a Massachusetts court convicted her of attacking and severely injuring two people. Following St. John's release, the federal government deported her to the Republic of Trinidad and Tobago, where she was born and lived for several years. St. John then filed a petition for a writ of habeas corpus, alleging that her original attorney performed so poorly that she was deprived of her federal constitutional right to effective assistance of counsel at her criminal trial. She named the Attorney General of Massachusetts as the respondent in her petition. The district court dismissed the petition for lack of jurisdiction, concluding that St. John was no longer in custody, as required by the habeas corpus statute. Because St. John was not in the custody of any Massachusetts state official when she filed her petition, we affirm.

## I. BACKGROUND

### A. Relevant Facts

In the early morning of October 26, 2007, 26-year-old Latoya Pannell lay in bed with her two young children when someone entered her Springfield apartment and doused her with hot cooking oil. Pannell suffered severe burns on her face and upper body; the oil also burned one of her children.

After a 2010 bench trial in which Pannell identified St. John as her assailant,[1] the Massachusetts Superior Court convicted St. John of burglary, mayhem, assault and battery with a dangerous weapon, and two counts of reckless endangerment of a child.[2]  See Mass. Gen. Laws. ch. 266, § 14; id. ch. 265 §§ 14, 15A, 13L.  The court then sentenced her to ten to eleven years in prison.  The Massachusetts Appeals Court affirmed St. John's conviction, and the Supreme Judicial Court denied further review. See Commonwealth v. St. John, 969 N.E.2d 185 (Mass. App. Ct. 2012) (unpublished table decision), review denied, 972 N.E.2d 1057 (Mass. 2012) (table).

In November 2013, while St. John was serving her sentence, an Immigration Judge (IJ) revoked her lawful permanent status in the United States because of her convictions.  The IJ also ordered her removal from the country.

Near the end of her sentence, St. John secured a different attorney, and, in September 2021, she moved for a new trial in the Superior Court.  The thrust of her argument was that her new attorney had found evidence demonstrating not only her innocence but also the ineffectiveness of her trial counsel.

---

[1] The government contended that St. John had the motive to harm Pannell because of the two women's competition over a man with whom both had children but who was incarcerated at the time of the attack.

[2] St. John waived her right to a jury trial.

Specifically, St. John pointed to court records indicating that two of Pannell's former romantic partners (each of whom had children with Pannell) were "serial domestic abusers." She highlighted a police report, which included allegations that one of those men burglarized Pannell's apartment in June 2009, less than two years after the hot oil attack. And she emphasized that the other man had relatives who lived near Pannell.

According to St. John, her original counsel was ineffective because she neglected to find this evidence and instead focused at trial on questioning Pannell's ability to identify her attacker, emphasizing that the crime occurred quickly and in the dark. In St. John's view, her trial counsel should have discovered this evidence and relied on it to accuse one of Pannell's former romantic partners of the attack, under the theory that Pannell intentionally misidentified St. John to protect them. St. John contended that two other pieces of evidence supported this theory. First, Pannell's door was fitted with a lock that required a key that one of Pannell's former partners might have had (but St. John did not). Second, the phrase "I dont want U any way" appeared to have been scrawled on Pannell's kitchen wall around the time of the attack. This evidence, St. John argued, was consistent with a former romantic partner, not her, having committed the crime. The Superior Court denied St. John's motion for a new trial, and the Massachusetts Appeals Court affirmed. See Commonwealth v.

St. John, 222 N.E.3d 510 (Mass. App. Ct. 2023) (unpublished table decision), review denied, 225 N.E.3d 808 (Mass. 2024) (table).

In December 2021, St. John was released from state prison into the custody of federal immigration authorities. Pursuant to the IJ's removal order, she was deported to Trinidad and Tobago on January 4, 2024. Federal immigration law prohibits St. John from ever reentering the United States, given her convictions. See 8 U.S.C. § 1182(a)(2)(A).

**B. Federal Court Proceedings**

With her state remedies exhausted, St. John filed a petition for a writ of habeas corpus in the U.S. District Court for the District of Massachusetts on March 15, 2024. See 28 U.S.C. § 2254. Even though the federal government had removed her to Trinidad and Tobago two months earlier, St. John named Andrea Joy Campbell, the Attorney General of Massachusetts, as the respondent in her petition. St. John argued that her 2010 state convictions were defective because she had been deprived of effective assistance of counsel at her state criminal trial. She also contended that, in denying her motion for a new trial, the Superior Court erred in ruling that the new evidence she proffered was inadmissible and in unreasonably determining facts related to the perpetrator's identity. See id. § 2254(d).

Campbell filed a motion to dismiss the petition, which the district court later granted. The court explained that, under

the habeas corpus statute, its jurisdiction was limited to petitions filed by "a person in custody." Id. § 2254(a) (emphasis added). It reasoned that, because St. John had completed her state sentence and the federal government had removed her from the country, no government official had custody of St. John when she filed her petition. Thus, the court concluded it lacked jurisdiction to consider the petition.

St. John timely appealed.

## II. DISCUSSION

Our analysis begins and ends with the fundamental requirement that a habeas petitioner name the individual "who has custody over" them as the respondent in their habeas petition.[3] Id. § 2242.

"[T]he traditional meaning and purpose of habeas corpus [is] to effect release from illegal custody." Lefkowitz v. Fair, 816 F.2d 17, 23 (1st Cir. 1987) (second alteration in original) (quoting Preiser v. Rodriguez, 411 U.S. 475, 486 n.7 (1987)). Thus, the statute granting jurisdiction for federal courts to consider habeas corpus petitions challenging state court judgments requires the petitioner to be "in custody":

> [A] district court shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground

---

[3] Like the district court, we do not reach Campbell's argument that St. John's petition was untimely.

that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a). We have gone so far as to deem custody "the essential statutory ingredient for initial jurisdiction." Fernos-Lopez v. Figarella Lopez, 929 F.2d 20, 23 (1st Cir. 1991) (per curiam) (quoting United States v. Michaud, 901 F.2d 5, 6 (1st Cir. 1990) (per curiam)). Custody "is determined as of the date a habeas petition is first filed." Id.

Following the Supreme Court, we have held that something less than "physical custody" can meet the custody requirement in the habeas corpus statute. Lefkowitz, 816 F.2d at 19 (citing, for example, Jones v. Cunningham, 371 U.S. 236, 240-43 (1963)). Even so, the petitioner "must be subject then and there to 'restraints not shared by the public generally,' and 'at the least, to some type of continuing governmental supervision.'" Id. (citations omitted) (first quoting Jones, 371 U.S. at 240; and then quoting Tinder v. Paula, 725 F.2d 801, 803 (1st Cir. 1984)). Parolees and probationers, for instance, may be "in custody" because the state retains "special supervisory authority" over them during their terms of parole or probation. Tinder, 725 F.2d at 803.

When St. John filed her habeas petition on March 15, 2024, she named Campbell as the respondent. Yet she was not in the custody, physical or otherwise, of the Commonwealth of Massachusetts at that time. In fact, she had not been in its

- 7 -

custody for several years, having been released to federal immigration authorities in December 2021, before her deportation to Trinidad and Tobago in January 2024.[4] So, she was not, at that time, in the custody of the person named in the petition as the custodian.

St. John's attempt to overcome this deficiency rests almost entirely on a single argument. She contends that her permanent exclusion from the United States amounts to a restraint severe enough to render her constructively "in custody" for the purposes of habeas jurisdiction. But we need not decide whether a habeas petitioner could ever be "in custody" solely by virtue of their exclusion from United States soil. And that is because the petition here suffers from a separate, fatal flaw.

A habeas petition must "allege . . . the name of the person who has custody over" the petitioner, and the writ must be "directed to the person having custody of the person detained."

---

[4] Because the Commonwealth did not have custody of St. John at the time she filed her petition, we need not address the parties' dispute regarding the "collateral consequences" doctrine, which concerns whether a petition becomes moot after the filing of a habeas petition. See Spencer v. Kemna, 523 U.S. 1, 7 (1998) (distinguishing the "in custody" requirement from Article III mootness); Lefkowitz, 816 F.2d at 20 ("[E]ven grievous collateral consequences stemming directly from a conviction cannot, without more, transform the absence of custody into the presence of custody for the purpose of habeas review.").

28 U.S.C. §§ 2242, 2243.[5]  These requirements stem from the fact that the writ of habeas corpus runs against the person who holds the petitioner in custody.  See Vasquez v. Reno, 233 F.3d 688, 690 (1st Cir. 2000) ("[T]he writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." (quoting Braden v. 30th Jud. Cir. Ct., 410 U.S. 484, 494-95 (1973))).  Even under the capacious notion of "custody" that St. John urges us to adopt, she does not allege that an officer of the Commonwealth is her custodian.  Cf. Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004) (specifying that the "custodian" is "'the person' with the ability to produce the prisoner's body before the habeas court," that is, "who has the immediate custody of the party detained" (first quoting 28 U.S.C. § 2243; and then quoting Wales v. Whitney, 114 U.S. 564, 574 (1885))).  Thus, St. John has failed to name a proper

---

[5] See also Rules Governing Section 2254 Cases in the United States District Courts 2(a), (b) (requiring the petitioner to "name as respondent the state officer who has custody" of them, or, if the petitioner is "not yet in custody -- but may be subject to future custody," to "name as respondents both the officer who has current custody and the attorney general of the state where the judgment was entered").

respondent, which requires the dismissal of her petition.  <u>See</u>

<u>Vasquez</u>, 233 F.3d at 697.[6]

### III. CONCLUSION

For all these reasons, we **<u>affirm</u>** the district court's

order.

---

[6] Although this analysis diverges in part from the district court's reasoning, "we can sustain a ruling based on alternate grounds not articulated by the district court, so long as there is persuasive support for that analysis in the record." <u>United States</u> v. <u>Cruz-Rivera</u>, 14 F.4th 32, 44 (1st Cir. 2021).